**Deborah M. WALTON, Appellant,**

v.

**CLAYBRIDGE HOMEOWNERS ASSOCIATION, INC.,
Appellee.**

No. 29A02–0408–CV–661.

Court of Appeals of Indiana.

April 12, 2005.

Deborah M. Walton, Indianapolis, IN, for Appellant, Pro se.

Elizabeth I. Van Tassel, Coots, Henke & Wheeler, P.C., Carmel, IN, Attorney for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Defendant, Deborah M. Walton (Walton), appeals the trial court's Order awarding Appellee–Plaintiff, Claybridge Homeowners Association, Inc. (HOA) attorney fees and costs incurred in defending an appeal and filing and defending its fee petition.

We affirm.

### ISSUES

Walton raises several issues on appeal, which we restate as follows:

(1) whether the trial court erred by awarding the HOA attorney fees and costs incurred in defending Walton's appeal of the trial court's order granting an injunction; and

(2) whether the trial court erred by awarding the HOA attorney fees and costs incurred in preparing and defending its fee petition.

### FACTS AND PROCEDURAL HISTORY

In 2000, Walton purchased a lot in a subdivision known as Claybridge at Springmill, in Hamilton County. At that time, the developer had already constructed an entryway wall and wood fence on Walton's lot and landscaped around them as permitted by certain easements. Pursuant to a declaration of covenants and restrictions (DCR), to which Walton's lot was subject, the HOA was required to maintain the easements and any plantings on them and maintain and replace fences within any landscape easement on an owner's lot. Walton, however, prevented the HOA from performing its obligations.

As a result, the HOA sought a permanent injunction against Walton. The trial court, finding that Walton had interfered with the HOA's obligation to maintain the easements, granted the HOA's request. Having concluded that the HOA was entitled to injunctive relief, the trial court then concluded that, pursuant to Section 17 of the DCR, the HOA was a prevailing party

"entitled to recover all costs of enforcement and attorney[ ] fees incurred...." (Appellant's App. p. 270). The trial court further concluded that the HOA was permitted to "request a hearing on its costs, attorney[ ] fees and other damages, if any." *Id.*

Walton appealed the trial court's decision to issue an injunction against her. The essence of her contention on appeal was that the HOA did not have authority to maintain the easements on her residential lot because it was not subject to the DCR. Walton further argued that because the HOA was not entitled to the injunction, the trial court improperly awarded the HOA attorney fees. On July 15, 2003, a panel of this court handed down a memorandum decision in which it concluded that Walton's lot was subject to the DCR, and therefore, the injunction was properly granted. *Walton v. Claybridge Homeowners Ass'n, Inc.*, No. 29A04–0207–CV–348, slip. op., 792 N.E.2d 104 (Ind.Ct.App. 2003), *trans. denied.* This court further concluded that because the trial court properly issued the injunction, it "did not abuse its discretion when it ordered Walton to pay the Association's attorney fees." *Id.* at 13, n. 4.

While the case was on appeal, the HOA requested a hearing "to determine the amount of attorney fees, costs and other damages" to which it was entitled under the DCR. (Appellee's App. p. 1). Eventually a hearing was held on April 26, 2004. At the hearing, the attorneys for the HOA maintained that the HOA was entitled to a total of $64,600.99 in attorney fees and costs incurred by them in the following three areas: (1) obtaining the injunction against Walton; (2) defending Walton's ap-

peal of the trial court's decision; and (3) filing and defending its fee petition. Walton conceded that the HOA was entitled to reasonable attorney fees and costs expended in obtaining the permanent injunction, but disputed the HOA's claim for attorney fees and costs associated with defending the appeal and pursuing its fees. On July 15, 2004, the trial court issued an order awarding the HOA $64,600.00 in attorney fees and court costs and $248.00 in damages. Walton now appeals.[1]

### DISCUSSION AND DECISION

Initially we note that the controversy in this appeal is based upon Section 17 of the DCR, which allows a party who has "substantially prevail[ed]" in an action to enforce the restrictions and conditions imposed by the DCR, "to recover all costs of enforcement, including attorney[ ] fees...." (Appellant's App. p. 246). Having successfully obtained an injunction in the trial court and defended the trial court's decision on appeal, the HOA then sought to recover its "costs of enforcement." The HOA maintains that those costs include attorney fees and costs for the following actions: (1) obtaining the injunction in the trial court; (2) defending the trial court's judgment on appeal; and (3) preparing and defending its fee petition. On appeal, Walton challenges the trial court's award of fees and costs associated with the latter two actions. We discuss each in turn, beginning with the award for fees and costs incurred in defending the judgment on appeal.

> I. *Attorney Fees and Costs Incurred on Appeal*
>
> A. *Appellate Attorney Fees*

■ First, Walton contends that the trial court erred when it awarded the HOA

---

1. In response to Walton's appeal, the HOA filed a motion to dismiss, claiming that the trial court's order was not a final appealable order. This court denied the HOA's motion after concluding that the trial court's order was appealable by right under Appellate Rule 14(A)(1).

approximately $24,000.00 in appellate attorney fees. In particular, Walton maintains that the issue of appellate attorney fees had been considered and decided against the HOA in this court's memorandum decision upholding the trial court's grant of injunctive relief. Consequently, Walton contends that the HOA is barred from relitigating the issue in the instant case under the doctrine of res judicata.

To support her contention, Walton directs this court's attention to a statement contained in the HOA's appellate brief defending the trial court's decision to issue the injunction. The statement, which is the last line of the HOA's brief, reads as follows: "The injunction should be affirmed and the Association permitted to collect its costs and attorney fees, including appellate attorney fees." (Appellee's App. p. 98). According to Walton, this statement was a specific request for appellate attorney fees, which she claims was denied by this court when we made the following statement in our memorandum decision: "Because we conclude that the trial court properly entered a permanent injunction and restraining order against Walton, the trial court did not abuse its discretion when it ordered Walton to pay the Association's attorney fees." *Walton,* No. 29A04–0207–CV348, slip. op. at 13, n. 4. According to Walton, because this court did not specifically address appellate attorney fees, it must have denied them. We disagree.

■ Initially, we note that the doctrine of res judicata does not apply under these circumstances. While the doctrine bars a party from relitigating an issue previously decided on the merits, there must have been a judgment entered in a prior action. *See Hood v. G.D.H.,* 599 N.E.2d 237, 239 (Ind.Ct.App.1992) (recognizing that doctrine of res judicata bars litigation of issues and claims litigated and decided in

prior cause of action). Because Walton is attempting to establish that the issue of appellate attorney fees was decided in a prior appellate opinion in this case, and not a prior cause of action, her claims fails.

■ Moreover, even were we to consider the closely related doctrine of law of the case, which more appropriately describes Walton's claim, Walton's contention still fails. Under the doctrine of the law of the case, appellate courts will not reexamine issues already decided in the same case. *Rosby Corp. v. Townsend, Yosha, Cline & Price,* 800 N.E.2d 661, 664 (Ind. Ct.App.2003), *trans. denied.* "However, to invoke the law of the case doctrine, the matters decided in the prior appeal clearly must appear to be the only possible construction of an opinion, and questions not conclusively decided in the prior appeal do not become the law of the case." *Id.* Here, considering the manner in which attorney fees were addressed in the trial court's order granting the injunction and the parties' contentions on appeal, we cannot say that the trial court's refusal to award the HOA appellate attorney fees is the only possible construction of this court's statement.

In its order, granting the HOA's request for a permanent injunction against Walton, the trial court focused on whether Walton's lot was subject to the DCR. After concluding that it was, and that the HOA had lawfully entered her property to maintain the easements, the trial court generally concluded that the HOA had "substantially prevailed ... and [wa]s entitled to recover its costs of enforcement including attorney[ ] fees pursuant to Section 17 of the Claybridge DCR." (Appellant's App. p. 268). Consequently, on appeal, a substantial portion of Walton's brief was devoted to explaining why the HOA did not have authority to enforce the DCR against her. (*See* Appellee's App. p. 22–36). Walton

maintained that if the HOA did not have authority to maintain the easements under the DCR, it should not have been granted the injunction. Walton further maintained that if the HOA was not entitled to an injunction, it had not established that it was a prevailing party entitled to costs, including attorney fees. (*See* Appellee's App. p. 39). In response, the HOA attempted to refute Walton's claims. (*See* Appellee's App. p. 64–84). Thus, on appeal, this court, in upholding the trial court's decision, focused on whether the HOA had authority to enforce the DCR against Walton. In a single statement contained in the final footnote of the opinion, this court concluded that because the injunction had been properly granted, the award of attorney fees was proper.

While this court did not specifically address appellate attorney fees, we find that it did not deny them. First we note that, contrary to Walton's assertion, the HOA's statement was not a specific request for appellate attorney fees. It was merely a general request asking this court to affirm the trial court's grant of injunctive relief so that in a future proceeding it could petition for attorney fees, including those incurred on appeal. In addition, given that the primary issue addressed by the trial court and the parties on appeal involved the HOA's authority to enforce the DCR, it appears that this court was merely stating its approval of the trial court's conclusion that the HOA, as a prevailing party, was entitled to seek any attorney fees permitted by the DCR. Therefore, the trial court did not err when it awarded the HOA appellate attorney fees.

### B. *Appellate Costs*

■ Walton also contends that the HOA was not entitled to $1,248.03 in costs incurred during the appellate process. Specifically, Walton contends that pursuant to Appellate Rule 67, the HOA was required to file a motion for appellate costs within 60 days of this court's decision.

Appellate Rule 67 provides in relevant part as follows:

Rule 67. Costs

A. Time for Filing Motion for Costs. Upon a motion by any party within sixty (60) days after the final decision of the Court of Appeals or Supreme Court, the Clerk shall tax costs under this Rule.

B. Components. Costs shall include:

(1) the filing fee, including any fee paid to seek transfer or review;

(2) the cost of preparing the Record on Appeal, including the Transcript, and appendices; and

(3) postage expenses for service of all documents filed with the Clerk.

The Court, in its discretion, may include additional items as permitted by law. Each party shall bear the cost of preparing its own briefs.

C. Party Entitled to Costs. When a judgment or order is affirmed in whole, the appellee shall recover costs. When a judgment has been reversed in whole, the appellant shall recover costs in the Court on Appeal and in the trial court or Administrative Agency as provided by law. In other cases, the recovery of costs shall be decided in the Court's discretion. Costs against any governmental organization, its officers and agencies, shall be imposed only to the extent permitted by law.

D. Supreme Court Equally Divided. When the Supreme Court justices participating in an appeal are equally divided, neither party shall be awarded costs. See Rule 58(C).

However, we need not consider the requirements of Appellate Rule 67 as the costs in this case were sought under a provision of the DCR, which has been recognized as a form of contract. *King v.*

*Ehrens,* 804 N.E.2d 821, 826 (Ind.Ct.App. 2004). Thus, the DCR, not the appellate rule, governed the HOA's right to recover costs. *See Weiss v. Harper,* 803 N.E.2d 201, 207 (Ind.Ct.App.2003) (concluding contract provision, providing recovery for "costs of litigation," controlled costs prevailing party could recover and not statute which limited recovery of costs to filing fees and statutory witness fees). As Walton does not otherwise challenge the HOA's right to recover appellate costs, we find no error.

## II. *Attorney Fees and Costs for Preparing and Defending the Fee Petition*

■ Finally, Walton contends that the trial court erroneously awarded the HOA $11,413.35 in attorney fees and costs incurred in preparing and defending its fee petition. To support her contention, Walton relies upon this court's holding in *Estate of Inlow,* 735 N.E.2d 240 (Ind.Ct.App. 2000). There, the trial court awarded the law firm representing the personal representative of an estate a $750,000.00 interim fee. *Id.* at 248–49. On appeal, the deceased's children challenged the portion of the fee awarded for time spent preparing and defending the fee petition. *Id.* at 250.

To resolve the claim, the *Inlow* court first looked to the section of the probate code governing attorney compensation in an estate proceeding. *Id.* The statute at issue allowed for reasonable compensation to "[a]n attorney performing services for the estate." *Id.* (citing Ind.Code § 29–1–10–13). Thus, the *Inlow* court had to determine, as a matter of statutory construction, whether "services for the estate" included preparing and defending a fee petition. *Id.* at 251. After considering relevant case law from other jurisdictions, the *Inlow* court determined that preparing and defending a fee petition in an estate proceeding were "service[s] performed for the attorney seeking to be paid, rather than ... service[s] performed for the estate." *Id.* at 253. The court explained that preparing and defending a fee petition are "routine cost[s] of doing business that must be factored into an attorney's hourly rate...." *Id.*

Walton acknowledges that the recovery of attorney fees in *Inlow* was based upon a particular section of the probate code, while recovery of attorney fees in this case is based upon the DCR. However, she maintains that the holding in *Inlow* should be extended to non-probate cases such as this because filing and preparing a fee petition are always routine costs of business. To support her contention, Walton refers to the following statement made by the *Inlow* court:

> To be paid, an attorney must first tell a client what he owes. Requiring a client to pay an additional amount for being told what he owes in the first instance is neither good business nor good law. The preparation of a fee petition, as of any billing statement, is clearly a service performed for the attorney seeking to be paid, rather than a service performed for the estate. Thus, time spent preparing the fee petition is a routine cost of doing business that must be factored into an attorney's hourly rate, *as is universally done with non-probate clients* ....

*Id.* at 253 (emphasis supplied).

■ While the *Inlow* court recognized that time spent preparing a billing statement generally is not charged to non-probate clients, we believe the court was referring to clients paying for an attorney's services and not parties seeking attorney fees under a contract. It is well established that parties are permitted to enter into agreements containing fee-shifting provisions as long as the provision does

not violate public policy. *Willie's Const. Co., Inc. v. Baker,* 596 N.E.2d 958, 963 (Ind.Ct.App.1992), *trans. denied.* As Walton does not suggest that the contract provision does not allow recovery for such fees, the only question before us is whether the provision violates public policy. This is a question of law to be determined under the particular facts of the case. *See Mutual Sec. Life Ins. Co. v. Fidelity and Deposit Co.,* 659 N.E.2d 1096, 1098 (Ind. Ct.App.1995), *trans. denied.* We find that it does not.

 The purpose of a fee-shifting provision is to make the prevailing party to a contract whole. *See Rauch v. Circle Theatre,* 176 Ind.App. 130, 374 N.E.2d 546, 554 (1978) ("The purpose of allowing an award of attorney's fees in a civil action is to more fully compensate a party who has successfully enforced his legal rights in court...."); *Parrish v. Terre Haute Sav. Bank,* 438 N.E.2d 1, 3 (Ind.Ct.App.1982) ("The purpose of attorney fee clauses ... is to make the holder [ ] whole in the event court action is necessary to vindicate [its] rights."). Thus, in general, fee-shifting provisions will be upheld if enforcement does not contravene this policy. *Compare Rogers Group, Inc. v. Diamond Builders, LLC,* 816 N.E.2d 415, 420 (Ind.Ct.App. 2004) (concluding prevailing party was entitled to attorney fees under contract where plaintiff's recovery under contract exceeded defendant's recovery on counterclaim), *trans. denied, with Willie's Const. Co.,* 596 N.E.2d at 964 (refusing to uphold award of attorney fees to prevailing party, whose claim was diminished by opposing party's counterclaim, when enforcement would "not further the purpose of compensating the successful party").

 As theses cases illustrate, the overriding concern in determining whether a fee-shifting provision should be upheld is whether enforcement makes the prevailing party whole. Here, Walton appears to argue that enforcing the fee-shifting provision in this case does not because preparing and defending a fee petition are services performed for the attorneys seeking to be paid, not the prevailing party. However, when the attorneys for the HOA prepared and defended the fee petition, they were acting on behalf of the prevailing party, just as they had done in obtaining the injunction and defending the trial court's judgment on appeal. Specifically, the attorneys were taking steps necessary to establish the attorney fees to which the HOA was entitled under the DCR. Requiring the HOA to absorb any fees or costs its attorneys incurred in establishing the fees would not fully compensate it for enforcing its rights.[2]

Therefore, we conclude that the holding in *Inlow* should not be extended to cases in which parties have entered into contracts with fee-shifting provisions. We further hold that because allowing fee awards for time spent pursuing fee requests fully compensates the prevailing party under the contract, such provisions do not violate public policy. Therefore, the trial court did not err when it awarded the HOA attorney fees and costs associat-

---

**2.** In addition, we note that awards for fees of this nature have been permitted by federal statute. *See, e.g., Uphoff v. Elegant Bath, Ltd.,* 176 F.3d 399, 411 (7th Cir.1999) (upholding district court's award of fees for preparation of fee request under Fair Labor Standards Act); *Kurowski v. Krajewski,* 848 F.2d 767, 777 (7th Cir.1988) (affirming award for "time spent pursuing requests for fees" in claim for attorney fees under 42 U.S.C. § 1988), *cert. denied,* 488 U.S. 926, 109 S.Ct. 309, 102 L.Ed.2d 328. If such fee awards are permitted under federal statute, we fail to see how permitting parties to contract for them violates public policy.

ed with preparing and defending the fee petition.

 Still, Walton claims that the trial court's award is unreasonable. According to Walton, the court's $11,413.35 award constitutes approximately eighteen percent of the court's total award of $64,600.00.

 Attorney fees awarded under a contract must be reasonable. *Seibert v. Mock*, 510 N.E.2d 1373, 1378 (Ind.Ct.App. 1987). However, trial courts are afforded discretion in determining a reasonable fee. *Dempsey v. Carter*, 797 N.E.2d 268, 275 (Ind.Ct.App.2003), *trans. denied*. On appeal, Walton bears the burden of establishing that the trial court abused its discretion. *Seibert*, 510 N.E.2d at 1378. We will find the trial court's award in error if it is "clearly against the logic and effect of the facts and circumstances...." *Dempsey*, 797 N.E.2d at 275.

Apart from characterizing the HOA's fee petition as "run-of-the-mill" and generally claiming that the tasks performed by the HOA's attorneys did not amount to nearly $12,000 worth of work, Walton does not otherwise explain why the award is unreasonable. (Appellant's Br. p. 13). In fact, Walton concedes that the HOA's fee petition was well documented. Under these circumstances, we cannot say that the trial court abused its discretion. *See Parrish*, 438 N.E.2d at 3–4 (finding an award of appellate attorney fees proper, under contract permitting recovery of attorney fees, where fee petition was documented with detailed time sheets and affidavit and party opposing fee petition failed to explain why fee was unreasonable).

### CONCLUSION

Based on the foregoing, we find that the trial court did not err when it awarded appellate attorney fees and costs. Because the issue of appellate attorney fees was not considered by this court in its prior appellate opinion, it is not the law of the case. With regard to costs incurred on appeal, the provision of the DCR awarding a prevailing party "all costs of enforcement," and not Appellate Rule 67, governed the HOA's recovery. The trial court's award of attorney fees and costs to the HOA for preparing and defending the fee petition was also not erroneous. The provision of the DCR awarding the HOA attorney fees did not violate public policy and Walton has failed to show that the amount awarded was unreasonable.

Affirmed.

CRONE, J., and ROBB, J., concur.